# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 17-1941V
UNPUBLISHED

| | |
|---|---|
| JANICE GUNTER,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: October 13, 2020<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Shoulder Injury Related to<br>Vaccine Administration (SIRVA) |

*Leah V. Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.

*Wei Kit Tai*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING DAMAGES[1]

On December 13, 2017, Janice Gunter filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Ms. Gunter alleges that she suffered a left shoulder injury related to vaccine administration (SIRVA) as a result of an influenza ("flu") vaccine administered on November 16, 2016. Petition at 1. The case was assigned to the Special Processing Unit (the "SPU") of the Office of Special Masters.

For the reasons described below, I find that Petitioner is entitled to an award of damages in the amount **$125,293.80, representing $125,000.00 for actual pain and suffering, and $293.80 for past unreimbursable expenses.**

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

I.     **Relevant Procedural History**

This case was initiated on December 13, 2017. ECF No. 1. On October 12, 2018, Respondent filed a status report stating that he was willing to engage in discussions regarding potential settlement. ECF. No. 18. One month later, Petitioner filed a motion to stay proceedings due to upcoming shoulder surgery. ECF No. 20. After the stay was lifted, on March 28, 2019, the parties attempted to informally settle this case but could not reach agreement. ECF No. 32.

On October 7, 2019, Respondent filed a Rule 4(c) Report opposing compensation because he did not believe Petitioner had offered preponderant evidence that onset of Petitioner's left shoulder pain occurred within 48 hours of vaccination. ECF 34 at 7. Subsequently, Petitioner submitted additional evidence supporting her onset contentions. *See* Ex. 12. Following a status conference, on November 29, 2019, Petitioner filed a motion for a ruling on the record on the onset issue. ECF No. 38 at 7. Respondent did not oppose Petitioner's motion, and on January 15, 2020, I issued a ruling finding Petitioner entitled to compensation. ECF No. 40. Following this ruling, the parties attempted to informally resolve the issue of damages, but again failed to do so. ECF No. 44.

A status conference was held the next month, and a scheduling order was issued on March 17, 2020, regarding the briefing of disputed damages issues. ECF No. 45. The parties have now filed their respective briefs (ECF Nos. 46 ("Br."), 48 ("Opp."), and 50 ("Resp.")). I proposed that the parties be given the opportunity to argue their positions at a motions hearing, at which time I would decide the disputed damages issues. ECF. No. 51. That hearing was held on October 2, 2020,[3] and the case is now ripe for a determination. The parties are not in dispute as to Petitioner's entitlement to $293.80 in past unreimbursable expenses, leaving only the determination of the pain and suffering component.

II.    **Relevant Medical History**

A complete recitation of the facts can be found in the Petition, the parties' respective pre-hearing briefs, and in Respondent's Rule 4(c) Report. In brief summary, Petitioner had a pre-vaccination medical history significant for rectal carcinoma, and on January 7, 2015, she underwent a procedure to address fecal incontinence, including Hartmann's procedure (proctosigmoidectomy) with small bowel resection and anastomosis. Ex. 4 at 20-23. Petitioner was discharged to home health services following the surgery for assessment and care of stoma and colostomy procedures. *Id.* at 2. Petitioner was recertified for home health services on November 1, 2016, for wound care as a result of continued issues with her incision since the January 2015 surgery. *Id.* at 468-471.

---

[3] At the end of the October hearing, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

Petitioner received the flu vaccine on November 16, 2016. Ex. 1 at 1. On that same day, Petitioner posted a message on Facebook stating, ". . . please agree with me in prayer that my left (flu shot) arm is better tomorrow . . . Never hurt like this before. Giving them higher now?" Ex. 12 at 1. Approximately four weeks later, on December 16, 2016, Petitioner reported to a home health nurse that her biggest concern was her left arm "where she received a flu shot about one month ago." Ex. 4 at 644. Petitioner reported that she instantly had pain following the vaccination, but had slowly lost range of motion and the pain was increasing. *Id.* Petitioner's arm pain was described as "soreness/sharp," she rated her pain at four out of five, severity was mild, and it was noted that she was not taking anything for pain. *Id.* at 646.

On February 15, 2017, Petitioner's orthopedist assessed Petitioner with impingement syndrome and she then received a Kenalog injection. Ex. 3 at 7. Petitioner subsequently had a left shoulder MRI on April 17, 2017, which revealed high-grade partial-thickness bursal surface tear of the distal supraspinatus/infraspinatus tendon superimposed on mild to moderate tendinosis and mild to moderate subacromial/subdeltoid bursitis. *Id.* at 12-13. On May 26, 2017, Petitioner received another Kenalog injection after her pain returned from the previous injection. *Id.* at 14. On July 5, 2017, Petitioner began physical therapy ("PT") services, and was discharged on October 6, 2017 for a total of thirteen (13) PT visits. Ex. 3 at 17, 54. On October 11, 2017, Petitioner was re-evaluated for PT services, but there is no indication that she continued with PT services. *Id.* at 40-42.

There is a subsequent thirteen-month gap before (on November 2, 2018) Petitioner again sought treatment relevant to this case, presenting to her orthopedist with complaints of left shoulder pain. Ex. 7 at 1. Petitioner reported that she had been performing her PT, but her pain was now waking her at night, and she had significantly limited range of motion, and was prescribed a Medrol Pak. *Id.* at 1-3. Petitioner discussed possible surgical options with her orthopedist. *Id.* at 3, 7.

On January 11, 2019, Petitioner underwent a left shoulder arthroscopic rotator cuff repair and left shoulder arthroscopic subacromial decompression with acromioplasty and bursectomy. Ex. 8 at 1. On January 29, 2019, Petitioner began PT services for her shoulder, and was discharged on May 10, 2019 to a home exercise program, for a total of twenty-six (26) PT visits. Ex. 9 at 21-22; Ex. 10 at 46-47. On May 13, 2019, Petitioner returned to her orthopedist and reported that she was doing well overall, noting some pain and discomfort at times. Ex. 11 at 1. Petitioner noted that PT went well and she saw improvement in her range of motion. *Id.* On October 30, 2019, Petitioner returned to her orthopedist reporting continued pain in her shoulder, and she received another subacromial injection. Ex. 13 at 1-4.

### III.   Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such

3

expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Hum. Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

I may also consider prior pain and suffering awards to aid my resolution of the appropriate amount of compensation for pain and suffering in this case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Hum. Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

Although pain and suffering in the past was often determined based on a continuum, as Respondent argues, that practice was cast into doubt by the Court several years ago. *Graves v. Sec'y of Health & Hum. Servs.,* 109 Fed. Cl. 579, 489-90 (2013). In *Graves*, Judge Merrow rejected a special master's approach of awarding compensation for pain and suffering based on a spectrum from $0.00 to the statutory $250,000.00 cap. Judge Merrow maintained that to do so resulted in "the forcing of all suffering awards into a global comparative scale in which the individual petitioner's suffering is compared to the most extreme cases and reduced accordingly." *Graves*, 109 Fed. Cl. at 590. Instead, Judge Merrow assessed pain and suffering by looking to the record evidence, prior pain and suffering awards within the Vaccine Program, and a survey of similar injury claims outside of the Vaccine Program. *Id.* at 595. Under this alternative approach, the statutory

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

4

cap merely cuts off *higher* pain and suffering awards – it does not shrink the magnitude of *all* possible awards as falling within a spectrum that ends at the cap.

### IV.     Appropriate Compensation for Petitioner's Pain and Suffering

In this case, Petitioner's awareness of her injury is not disputed, leaving only its severity and duration to be considered. In determining appropriate compensation for Petitioner's pain and suffering, I have carefully reviewed and considered the complete record in this case. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating such cases.[5] However, my determination is ultimately based upon the specific circumstances of this case.

In his damages brief, Respondent cites to a syncope case to support his recommended proffer for pain and suffering.[6] I find, however, that *SIRVA damages* decisions provide a more appropriate framework for analyzing Petitioner's pain and suffering – for the obvious reason that Petitioner's symptoms, course of treatment, and outcome are similar to those commonly found in SIRVA cases.

Citing *Reed*[7], Petitioner requests an award of $170,000.00 in past pain and suffering, based primarily on the course of her SIRVA, physical and mental anguish, and the long duration of her injury. Br. at 9. Petitioner asserts that her pain was severe for two years after the vaccination, such that she could not pick up her infant granddaughter. *Id*. In her affidavit, Petitioner explained that she also had not been able to care for her animals like she could before, she could not mow her own yard anymore, she could no longer carry in firewood, saddle and ride her own horse, or ride her Harley-Davidson motorcycle. Ex. 14 at 1. Petitioner also detailed the impact of her SIRVA on her activities of daily living. *Id*. at 2. Petitioner noted that she is a lot more dependent upon neighbors, family, and friends for activities that she used to carry out independently. *Id*. at 1-2.

---

[5] Statistical data for all SIRVA cases resolved in SPU from inception through January 2020 as well as a brief description of any substantive decisions can be found in the following decisions: *Vinocur v. Sec'y of Health & Hum. Servs.,* No. 17-0598V, 2020 WL 1161173 (Fed. Cl. Spec. Mstr. Jan. 31, 2020); *Wilt v. Sec'y of Health & Hum. Servs.,* No. 18-0446V, 2020 WL 1490757 (Fed. Cl. Spec. Mstr. Feb. 24, 2020); *Smallwood v. Sec'y of Health & Hum. Servs.,* No. 18-0291V, 2020 WL 2954958 (Fed. Cl. Spec. Mstr. Apr. 29, 2020).

[6] *See H.S. v. Sec'y of Health & Hum. Servs.,* No. 14-1057V, 2015 WL 6155891 (Fed. Cl. Spec. Mstr. Sept. 25, 2015) (Petitioner was a junior-high student who experienced syncope following a Tdap vaccination. Petitioner was awarded $60,000.00 in pain and suffering.)

[7] *Reed v. Sec'y of Health & Hum. Servs.*, No. 16-1670V, 2019 WL 1222925 (Fed. Cl. Spec. Mstr. Feb. 1, 2019) (awarding $160,000.00 for pain and suffering)

5

Pursuant to my oral ruling on October 2, 2020 (which is fully adopted herein), **I find that $125,000.00 represents a fair and appropriate amount of compensation for Petitioner's past pain and suffering.**

The overall severity of the injury at issue is not high enough to warrant the magnitude of the award requested by Petitioner. I note that although Petitioner did not report her shoulder pain immediately after her vaccination, her delay is understandable considering the other medical treatment and pain she experienced during the time of her vaccination, including an open wound to her abdomen. Moreover, the onset of Petitioner's pain is sufficiently corroborated by her Facebook post on the same day as her vaccination. However, the record in this case also reflects more than a one-year gap in treatment for Petitioner's shoulder after the initial onset. This gap bears on the magnitude of pain and suffering to be awarded in this case. In addition, Petitioner did eventually require shoulder surgery, a fact that bulwarks the severity of the overall injury. All of these facts suggest the severity was not so intolerable to justify one of the higher pain and suffering awards for SIRVA – but also that the amount to be awarded should not be *de minimis* either.

Petitioner argues that her case is comparable to *Reed*, where the petitioner was awarded $160,000.00 in pain and suffering. While some of the facts in *Reed* are similar, however, that case is mostly distinguishable – in particular due to Petitioner's one-year gap in treatment. The *Reed* petitioner's pain following the Tdap vaccination was severe enough to cause her to seek surgical intervention within six months – unlike this case, where Petitioner did not have surgery for more than two years after her vaccination. The fact that Petitioner's injury did not merit more invasive treatment on a shorter timeframe undercuts her allegations of its severity because of the longer duration, and therefore supports a lesser pain and suffering award than Petitioner requests. Petitioner also alleges that her case is similar to *Reed* because both petitioners found their ability to perform childcare limited by their injury – but the cases are not truly comparable on this issue either. As previously noted, Petitioner was unable to lift and carry her infant granddaughter, while Ms. Reed was a single mother to an eight-year-old, and thus whose physical deficits had a greater life impact.

Respondent on the other hand, citing *Selling*,[8] submits that an award of $97,500.00 is appropriate in this case (Opp. at 1), but it too is inapposite. The *Selling* petitioner had severe and debilitating pain for ten months until he underwent a shoulder manipulation procedure. In addition, he had far fewer physical therapy visits (18 PT visits compared to Petitioner's 39), and Mr. Selling's shoulder was mostly back to normal approximately five months after his surgery, whereas Petitioner here continues to experience shoulder pain. Even discounting Petitioner's gap in treatment, she received active treatment for at least

---

[8] *Selling v. Sec'y of Health & Hum. Servs.*, No. 16-588V, 2019 WL 3425224 (Fed. Cl. Spec. Mstr. May 2, 2019) (awarding $105,000.00 for pain and suffering).

6

three years total, and her pain and suffering award should account for that time, even if treatment was delayed.

The circumstances in this case are, in my reasoned determination, most analogous to those in *Roberson* and *Meyers*.[9] In *Roberson*, the petitioner experienced immediate, severe pain, attended multiple courses of PT, and underwent a significant surgical procedure, but was doing very well twelve weeks post-surgery. The *Meyers* petitioner received two steroid injections, underwent surgery eight months after vaccination, and experienced pain that interfered with her ability to care for her dependents while adversely impacting other activities of daily living. The petitioners in these cases thus had post-vaccination experiences comparable to Ms. Gunter's, and therefore the totality of the circumstances in this case warrants a similar award of pain and suffering.

### V.     Conclusion

For all of the reasons discussed above and based on consideration of the record as a whole, **I find that $125,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.[10] I also find that Petitioner is entitled to $293.80 in actual unreimbursable expenses.**

Accordingly, **I award Petitioner a lump sum payment of $125,293.80 in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under § 15(a).

The clerk of the court is directed to enter judgment in accordance with this decision.[11]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u><br>
Brian H. Corcoran<br>
Chief Special Master

---

[9] *Roberson v. Sec'y of Health & Hum. Servs.*, No. 19-90V, 2020 WL 5512542 (Fed. Cl. Spec. Mstr. August 7, 2020) (awarding $125,000.00 in pain and suffering); *Meyers v. Sec'y of Health & Hum. Servs.*, No. 16-909V, 2020 WL 3755335 (Fed. Cl. Spec. Mstr. June 5, 2020) (awarding $122,500.00 in pain and suffering).

[10] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* § 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[11] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.